ORIGINAL

GINARTE, O'DWYER, GONZALEZ & WINOGRAD. LLP
Attorneys for Plaintiff - JORGE JOYA
225 Broadway, 13th Floor
New York, New York 10007
(212) 601-9700

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JORGE JOYA, | : **CIVIL ACTION NO.: 08 cv 5328 (PKL)** |
| | : |
| Plaintiff, | : **AFFIRMATION IN OPPOSITION TO** |
| | : **DEFENDANT VERIZON'S MOTION** |
| v. | : **FOR A MORE DEFINITE STATEMENT** |
| | : **PURSUANT TO F.R.C.P. 12(e)** |
| VERIZON NEW YORK, INC. AND | : |
| MASTEC NORTH AMERICA, INC. | : |
| | : |
| Defendants | : |
| | : |

RICHARD M. WINOGRAD, ESQ., an attorney duly admitted to practice law before the Courts of the State of New York, United States District Court and the Southern District of New York, under the penalty of perjury, affirms the following:

1.     I am a partner at Ginarte, O'Dwyer, Gonzalez & Winograd, L.L.P., attorneys for the Plaintiff, Jorge Joya, in the above-captioned matter. I submit this Affirmation in opposition to Verizon's Motion for a more definite Statement, pursuant to Federal Rule of Civil Procedure 12(e).

2.     This action arises out of an accident occurring on or about May 15, 2006, in which the Plaintiff, a laborer for A&A Cable Contractors, sustained injuries when a chain or cable snapped under tension striking him in the face resulting in severe injuries to the right eye.

3.     Plaintiff filed this action based on Diversity of Citizenship against the entities he

reasonably believed served as the owner and contractor for construction work being performed at the time of his accident.

4.    One of these two entities, Verizon New York, has filed a motion for more definite statement pursuant to Federal Rules of Civil Procedure 12(e) because Plaintiff has not pinpointed the precise location of his accident in the complaint that has been filed.

5.    This motion should be denied for three reasons:

        a)    Plaintiff has employed not only due diligence, but engaged in extraordinary efforts in an attempt to identify the exact address where the accident occurred and such efforts have been unsuccessful.

        b)    Further efforts by Plaintiff to identify the exact address are not likely to be successful without the cooperation of the named defendants.

        c)    It is anticipated that the defendants, who were in control of the information about the projects it worked on, are in a far better position than Plaintiff in these circumstances to identify the location of the accident, particularly now that they are in possession of all of the materials plaintiff has produced concerning his investigation of the accident.

6.    Counsel was first retained by Plaintiff on November 20, 2006 in a personal interview conducted with a Spanish translator. At that time Mr. Joya presented with the obvious effects of an injury to his face and in particular his right eye that he related to an accident occurring on May 15, 2006 in the Syracuse, New York area. At the time of the interview, Mr. Joya had in his possession documentation from the Texas Mutual Insurance Company consisting of a letter dated

June 9, 2006, confirming what he had told us about his accident with respect to the date of same and the name of his employer.  **(See Exhibit "1")**

7.      During the time of the interview, Mr. Joya, a resident of the State Maryland, advised us that he was still receiving Workers Compensation benefits from the State of Texas where his employer, A&A Cable Contractors was based.

8.      Plaintiff further related that his employer had been hired by Verizon to install piping under a driveway, which we understood to mean that lines for a phone system were being installed.  Apparently while pulling on a one inch diameter rope constructed of metal wire and rubber, an effort was being made to move a pipe.  The rope snapped and struck his face.  Mr. Joya was not wearing any protective goggles at this time.

9.      During the course of this interview counsel ascertained the names and any phone numbers of witnesses.  There were three witnesses, but Mr. Joya only knew partial names and only one phone number.  This law office completed the remainder of an intake for this type of case.

10.     Immediately after the conclusion of the interview, a private investigator from Trademark, Inc. by the name of Steve Ward was hired and directed to obtain statements of the witnesses and to perform a thorough investigation about this accident.

11.     As it relates to the issues on this motion he was specifically directed to obtain the location of the accident and work permits.

12.     On January 24, 2007, this office forwarded correspondence to Plaintiff's employer, A&A Cable in Houston, Texas asking for a complete copy of their records relating to our client's employment.  It was anticipated that with the production of that information, the exact location of the accident would be apparent.  **(See Exhibit "2")**

However, there was no immediate response to the letter of January 24, 2007 from the employer, with the exception of a series of letters beginning on July 5, 2007 from the Worker's Compensation carrier, Texas Mutual Insurance Company, advising of the amount of payments that have been made for medical treatment and temporary total disability. Such letters were dated July 5, 2007, September 11, 2007, November 27, 2007 and February 28, 2008.

13.     On February 12, 2007, we received a written report from the investigator about his investigation. We were informed that he appeared at the Syracuse Code Enforcement Office seeking work permits and applications filed by Verizon during that year in the Syracuse, New York area. The agent was advised there were eleven job sites that were possible sites and he then put in a request for information about those sites. The investigator also reported on his contact with O.S.H.A., in view of the serious nature of the injuries in the hope that an investigation might have taken place. The O.S.H.A. representative at that time was unable to provide any assistance.

14.     In a report dated February 28, 2007, the investigator indicated that he had, after many attempts, finally spoken with a witness, Richard Hernandez, over the telephone, who advised him that the location of the accident was 9695 Carpenter Road, Syracuse, New York. Mr. Hernandez told our investigator that he was working with Plaintiff at the time of the accident and confirmed essential details about it. However, Mr. Hernandez reported that instead of a machine, a pick up truck was pulling a cable with a chain at the time of the accident. According to him, the chain broke and struck Mr. Joya in the face.

15.     Following up on Mr. Hernandez's information, the investigator appeared at the Syracuse Code Enforcement Office and the Department of Buildings, asking for information about the stated location. He was advised they would process his request.

Page 4 of 8

16.    Mr. Ward also contacted O.S.H.A. again providing them with this location and the O.S.H.A. representative responded that there was a report of a complaint of an incident at 8693 Carpenter Road rather than 9695 Carpenter Road. However, although there was a complaint taken no action was taken by O.S.H.A. about it.

17.    Mr. Ward received information about other potential witnesses and indicated that he would continue working with following up the information about the location of accident and the witnesses.

18.    In a letter dated April 13, 2007, we received another report from the investigator advising that the Department of Buildings had no records regarding the street in question or any road work being done on Carpenter Road. However, the Department of Buildings cautioned that that agency would only have records of road work being done.

19.    In this report, the agent also reported checking with the New York City Department of Transportation for all road work, permits and applications. None were found. He similarly checked with law enforcement throughout the area, but found no report of any incidents at or about the time in question.

20.    Efforts to reach other witnesses were unsuccessful with reports from our investigator varying that they either could not be reached or were uncooperative.

21.    Plaintiff's counsel however, continued to make telephone calls to the employer seeking to verify the location of the accident. Finally in a fax dated November 14, 2007 from Amy Solis of A&A Cable Contractors, Inc., we were advised that the closest location they could narrow for the accident was the 8600 block of Carpenter Road in a place called Radisson, New York. She also enclosed a report of injury and supplemental report of injury, which confirmed the essential

details of the accident. **(See Exhibit "3)**

       None of this information was particularly useful since neither the first report of injury or the supplemental report identified where the accident took place and we could find no reference anywhere of any Township by the name of Radisson in the State of New York.

    22.    In a letter dated November 16, 2007, we received a follow up investigative report from our investigator, at which time he confirmed that the town of Lysander was responsible for any road work being done within the City of Syracuse. The agent appearing at the Town of Lysander then submitted request for all records and permits for Verizon at or near the location of the loss during the subject year. These efforts were totally negative. One permit was issued to Verizon near the area of loss about two blocks away, but that permit was issued one month after the date of accident and the work was reportedly on a relay tower. No records were found indicating that the Plaintiff was injured at that location. The investigator reported that the witness he was speaking to, Mr. Hernandez, was no longer responsive to his inquiries and that his efforts to contact the employer were met with no cooperation. He concluded he found no police report on file, no permits within the State of New York and none within either the City of Syracuse or the Town of Lysander.

    23.    Thereafter, your affiant continued with efforts to locate the site of the accident by placing telephone calls to Jessie Salcedo of Texas Mutual Insurance Company, the individual who had forwarded to us copies of his lien letter.

    24.    I do recall several conversations with Mr. Salcedo, at which time he indicated he was unable to provide us with any further information. However, on April 9, 2008, pursuant to my request, he did enclose copies of sub-contractor agreements, which contained information about the terms of a sub-contractor agreement between defendant Mastec and A&A Cable Contractors. Most

importantly he attached as Schedule "1", a document which indicated that for this job the primary/ contractor owner was Verizon, the contractor Mastec North America and the sub-contractor A&A Cable Contractors Inc. **(See Exhibits "4-5)**.

25.    The effective date on that contract was May 5, 2006 and the primary contract location was Syracuse, New York.  A job number of 61022 was referenced.

26.    It was based on this last piece of information which specifically corroborated all the essential information to identify the potential parties to any lawsuit that a decision was made to file this action.

27.    Plaintiff maintains that based on Exhibit "1" Verizon should be able to identify various sites in the Syracuse, New York region where work of this nature was being performed on May 15, 2006.  Presumably the job number will be useful as well.

28.    Plaintiff has used all reasonable means to identify the precise location of this accident.

29.    This information cannot be obtained without obtaining discovery from the defendants in this case.

For all the foregoing reasons, it is respectfully requested that this Court enter an Order denying the motion for a more definite statement and compelling the defendant to file an answer within the time required by law.

Dated: New York, New York
       August 27, 2008

                               GINARTE, O'DWYER, GONZALEZ & WINOGRAD, LLP
                               *Attorneys for Plaintiff - JORGE JOYA*

                               Richard M. Winograd (RW6911)

225 Broadway, 13th Floor
New York, New York 10007
(212) 601-9700


To:    Ledy-Gurren Bass & Siff
       Attorneys for Defendants - **VERIZON**
       475 Park Avenue South
       New York, New York 10016
       (212) 447-1146

       Jones Hirsch Connors & Bull P.C.
       Attorneys for Defendants - **MASTEC**
       1 Battery Park Plaza, 28th Floor
       New York, New York 10004

EXHIBIT "1"

# TexasMutual ®
Insurance Company

Claim and Insurance Services
P.O. Box 12029
Austin, Texas 78711-2029

<u>NOTIFICATION OF FIRST TEMPORARY INCOME BENEFIT PAYMENT</u>

**DATE:**      06/09/2006

**TO:**         JOYA, JORGE
              18415 LOST KNIFE CIRCLE APT 104
              MONTGOMERY VILLAGE MD  20886

**RE:**         Date of Injury:               05/15/2006
              Nature of Injury:            LACERATION
              Part of Body Injured:       MULTIPLE HEAD INJURY
              Employee SSN:               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
              DWC #:
              Carrier Name:                Texas Mutual Insurance Company
              Carrier Claim Number:    99G0000452359
              Employer:            .       A & A CABLE CONTRACTORS I
                                             12506 ANN LN
                                             HOUSTON TX  77064-1208

Your first payment of workers' compensation benefits for the period of 05/16/2006 to 06/12/2006 is being issued.  The benefit payment is called "Temporary Income Benefits" **(TIBS)** and is paid weekly.  Entitlement to TIBs begin after you have had lost wages for more than 7 days.  TIBs began on 05/23/2006 which was your eighth day of disability.  The TIBs weekly benefit amount of $418.60 is based on the reported Average Weekly Wage of $598.00.

Please inform us within **3 days** if you:
  - Start earning income from the same employer, a different employer, or from self-employment; or
  - Have any change in earnings resulting from your injury, either an increase or decrease; or
  - Have an offer of employment at any wage level.

You are encouraged to contact your employer regarding any return to work program that will allow you to work within the restrictions prescribed by your treating doctor.

If you are expected to be paid benefits for a period of eight weeks or more, you may request that we make your benefit payments by electronic funds transfer directly to your bank account.  Also, you may request that we change your TIBs from a weekly payment to a monthly payment.

Explanatory Comments:  Initial payment of temporary income benefits from 5/16-6/12/06.
Waiting period is included.

**If you do not agree with the amount of weekly income benefits being paid, please contact me:**
  **Adjuster's Name:**                    MICHAEL D. BATES
  **Toll Free Telephone #:**            (800) 859-5995
  **Fax #/E-mail Address:**             (512) 224-3889



**If we are unable to resolve the issue to your satisfaction, you may contact the** <u>Texas Department of Insurance, Division</u> **of Workers' Compensation for further assistance. You have the right to request a** <u>Benefit Review Conference.</u> **You can contact the Division office handling your claim at 1-800-252-7031.**

If you would like to receive notices such as this by facsimile or e-mail, please contact me and provide your facsimile number or e-mail address.

**Please note that making a false or fraudulent workers' compensation claim is a crime that may result in fines and/or imprisonment.**

CC   JOYA, JORGE
        A & A CABLE CONTRACTORS I

EXHIBIT "2"

# GINARTE, O'DWYER & WINOGRAD, LLP

JOSEPH A. GINARTE∗
JOHN D. O'DWYER
RICHARD M. WINOGRAD □
MANUEL GONZALEZ
JOHN E. BIGGIANI
JORGE L. HERNANDEZ ▲
NICHOLAS M. TORRES □
MICHAEL A. GALLARDO □
BARRY D. WEIN
GARY R. NOVINS +
RICHARD L. KUHRT 2
BERNARD LAMBERT ○□
MOISES APSAN □ 2
JESUS J. PEÑA 2

ATTORNEYS AT LAW
305 BROADWAY, SUITE 800
NEW YORK, NY 10007

———

(212) 267-4185
FAX: (212) 267-4262

WWW.GINARTE.COM

OTHER OFFICES:
PASSAIC, NJ 07055
NEWARK, NJ 07105
ELIZABETH, NJ 07201
PERTH AMBOY, NJ 08861
NEW BRUNSWICK, NJ 08901
UNION CITY, NJ 07087

———

ROGER GUARDA, CLAIMS MGR.

1 CERTIFIED BY THE SUPREME COURT OF
  NEW JERSEY AS A CIVIL TRIAL ATTORNEY
2 OF COUNSEL
+ ADMITTED TO NY
▲ ADMITTED TO NJ & PA
□ ADMITTED TO NJ & NY
✳ ADMITTED TO NJ & DC
◆ ADMITTED TO DC, FL & NJ
○ ADMITTED TO U.S. TAX COURT

January 24, 2007

A& A Cable Contractors
12506 Ann Lane
Houston, Tx 77064

Attn:  Personnel Department

Re: Employee: Jorge Joya
D/A: 05/15/2006

Dear Sir/Madam:

This office represents your named employee in an action for injuries sustained in an accident on the above date.

We are interested in obtaining from you a complete copy of your records relating to our client's employment with your company to include the following: position held, wage verification, attendance records, medical folder (if one exists), disability and/or workers compensation records (particularly relating to this accident) and copies of any and all W-2 and/or 1099 forms in your possession. We would also appreciate confirmation as to whether or not our client has returned to work since the date of accident and if so, the date returned. Annexed hereto please find a duly executed authorization signed by your employee permitting the release of this information to our office.

Should there be a fee for the reproduction of these documents, kindly inform our office before copying and forwarding.  We thank you for your prompt attention herein.

Very truly yours,
Ginarte, O'Dwyer, Winograd

*Maggie Tirado*
Maggie Tirado, Legal Secretary

MT
Encls



OCA Official Form No.: 960

# AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA
(This form has been approved by the New York State Department of Health)

Case 1:08-cv-06328-PKL Document 18 Filed 09/04/2008 Page 13 of 51

| Patient Name | Date of Birth | Social Security Number |
|---|---|---|
| Jorge Joya | | |

Patient Address: 18415 Lost Knife Circle, Apt 104, Gaithersburg, MD 20886

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL and DRUG ABUSE, MENTAL HEALTH TREATMENT**, except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

7. Name and address of health provider or entity to release this information:
A & A Cable Contractors, 12506 Ann Lane, Houston, Tx 77064

8. Name and address of person(s) or category of person to whom this information will be sent:
Ginarte, O'Dwyer & Winograd, 305 Broadway, Ste 800, NY, NY 10007

9(a). Specific information to be released:
- ☑ Medical Record from (insert date) _____ to (insert date) _____
- ☐ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test results, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.
- ☐ Other: _____

Include: (Indicate by Initialing)
_____ Alcohol/Drug Treatment
_____ Mental Health Information
_____ HIV-Related Information

Authorization to Discuss Health Information

(b) ☐ By initialing here _____ I authorize _____
Initials                        Name of individual health care provider
to discuss my health information with my attorney, or a governmental agency, listed here:

_____
(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information: | 11. Date or event on which this authorization will expire: |
|---|---|
| ☐ At request of individual<br>☑ Other: Legal Matter | 3 Years of this Date |

12. If not the patient, name of person signing form:

13. Authority to sign on behalf of patient:

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

X _____ JJJ          Date: 01/24/07
Signature of patient or representative authorized by law.

GARY R. MOUNS

\* Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.

Notary Public, State of New York
No. 02MO5021832
Qualified in Suffolk County
Commission Expires Dec. 27, 200X

EXHIBIT "3"



# A facsimile from

## A & A Cable Contractors, Inc.
12506 Ann Lane
Houston, TX 77064
Bus: 281-469-2888
Fax: 281-469-2885

**To:** Maggie Tirado
Fax number:  212-267-4262

**From:  Amy Soliz**

**Date:** 11/14/2007

**Regarding:** Jorge Joya case

**Comments: The closest location that I can narrow the accident to is the 8600
block of Carpenter Rd., Radisson, NY.  Following this coversheet is the First
Report of Injury and the Supplemental Report of Injury.**

877-404-7999

| TWCC CLAIM # _____ |
| CARRIER'S CLAIM # _____ |

## EMPLOYER'S FIRST REPORT OF INJURY OR ILLNESS

| 1. Name (Last, First, M.I.) | | 2. Sex | 12. Date of Injury (m-d-y) | 13. Time of Injury | 14. Date Last Time Began |
| Toya Jorge | | M ☑ F ☐ | 5-15-06 | ☐ AM ☑ PM | (m-d-y) 5-15-06 |

| 3. Social Security Number | 4. Home Phone | 5. Date of Birth (m-d-y) | 15. Nature of Injury |
| | | 11-30-1961 | Cut |

| | | | 16. Part of Body Injured or Exposed |
| | | | Face |

6. Does the Employee Speak English? If No, Specify Language: YES ☐ NO ☐ Spanish

17. How and Why the Injury/Illness Occurred: was pulling a pipe w/ a rope, the rope snapped and hit him in the face. Injured from cheek to his eye.

| 7. Race | White ☐ Black ☐ | 8. Ethnicity | Hispanic ☑ Female ☐ |
| | Native American ☐ | | Other ☐ |

21. Was employee doing his regular job? YES ☑ NO ☐   22. Worksite Location of Injury (state, zip, etc.)

9. Mailing Address (Street or P.O. Box)
8901 Jone Rd # 807    Harris

23. Address Where Injury or Exposure Occurred
Name of Business if Injury/Exposure at a business site

| City | State | ZIP Code | County |
| Hou | TX | 77065 | |

Street or P.O. Box
Carpenter Road
Radisson, New York

| 10. Marital Status | Married ☑ Widowed ☐ Separated ☐ Divorced ☐ | County |
| 11. Number of Dependent Children | 12. Spouse's Name | | Radisson    New York | | Zip Code |
| 1 | Juana Hernandez | | | | |

24. Cause of Injury (fall, tool, machine, etc.)
Rope

13. Doctor's Name
N/A

25. List Witnesses
Jorge Zarco

14. Doctor's Mailing Address (Street or P.O. Box)
N/A

| 26. Return to Work (m-d-y) 5-22-06 | 27. Did employee die? YES ☐ NO ☑ | 28. Supervisor's Name Jorge Zarco | 29. Date Reported (m-d-y) 5-15-06 |

| City | State | ZIP Code |
| N/A | | |

| 30. Date of Hire (m-d-y) 5-8-06 | 31. Was employee hired or recruited in Texas? YES ☑ NO ☐ | 32. Length of Service in Current Position 3 weeks Months Years | 33. Length of Service in Occupation 2 years Months Years |

34. Employee Payroll Classification Code

35. Occupation of Injured Worker
helper, Laborer

| 36. Rate of Pay at this Job $ N/A Hourly $ 600 Weekly | 37. Full Work Week 3: HD Hours N/A Days | 38. Last Paycheck thru: 5-26-06 $ 600 [week] | 39. Is employee an Owner, Partner, or Corporate Officer? YES ☐ NO ☑ |

40. Name and Title of Person Completing Form
Amy Soliz - OFFICE MANAGER

41. Name of Business
A & A Cable Contractors, Inc

42. Business Mailing Address and Telephone Number Street or P.O. Box     Telephone
12506 Ann Lane    281.469.2888

43. Business Location (if different from mailing address) Number and Street
12506 Ann Lane

| City | State | ZIP Code |
| Hou | TX | 77064 |

| City | State | ZIP Code |
| Hou | TX | 77064 |

| 44. Federal Tax Identification Number 76-0648286 | 45. Primary Business Industrial Classification (SIC) Code* (4 digit) | 46. Specific SIC Code* (4 digit) | 47. Texas Comptroller Taxpayer No. 3-20023-1204-7 |

48. Workers Compensation Insurance Company
Texas Mutual Insurance Company

49. Policy Number
TSF-0001130442 00

50. Did you request additional information in past 18 months? YES ☐ NO ☐   If yes, did you receive it? YES ☐ NO ☐  not sure

51. Signature and Title (READ INSTRUCTIONS ON INSTRUCTION SHEET BEFORE SIGNING)

X _____ - OFFICE MANAGER _____    Date 5-30-06

(TWCC1 2.01) 2/13/01    Revis 7.20.2

TWCC

ORIGINAL: TO INSURANCE CARRIER    COPY: TO EMPLOYEE    COPY: TO EMPLOYER

RECEIVED TIME MAY. 31.  2:50PM



**SUPPLEMENTAL REPORT OF INJURY**

TWCC #
Carrier # 99G00C0452359

**Part I    EMPLOYER INFORMATION**

| 1. Employer business name | 2. Employer phone # |
|---|---|
| A & A Cable Contractors, Inc. | 281-469-2888 |

3. Employer mailing address
12500 Ann Lane Hou, TX 77064

4. Insurance carrier name
Texas Mutual Insurance Company

5. Does the employer have return to work (RTW) opportunities available based on the injured worker's current capabilities?   yes ☐   no ☑

   If so, identify contact person and phone # _____

6. Has the insurance carrier provided RTW coordination services within the past 12 months?   yes ☐   DATE _____   no ☐

7. Has the employer requested RTW training from TWCC or the insurance carrier?   yes ☐   no ☐

8. Has the insurance carrier provided accident prevention services in the past 12 months?   yes ☐   DATE _____   no ☑

9. Has the employer requested accident prevention services from the insurance carrier?   yes ☐   no ☑

**Part II    REASON FOR FILING THIS REPORT (deadlines vary, see instructions)**

10. ☐ a.  The injured worker returned to work in either a full or limited capacity. File this report within 3 days.

   ☐ b.  The injured worker is earning more or less than the pre-injury wage because of the injury. File within 10 days.

   ☐ c.  The injured worker returned, then later had additional lost time or reduced wages as a result of the injury. File within 3 days.

   ☑ d.  The injured worker resigned or was terminated from employment. File within 10 days.

**Part III    INJURED WORKER INFORMATION**

| 11. Injured worker name | 12. SSN | 13. DOI |
|---|---|---|
| Drae Joya | 217-101-9082 | 5-15-06 |

14. Injured worker mailing address and phone #
8415 East Knife #104 Montgomery Village, Maryland 20886

| 15. First day of lost time or reduced wages for this injury (mm/dd/yyyy) | 16. First day of additional lost time or reduced wages (mm/dd/yyyy) |
|---|---|
| 5-15-06 | N/A |

17. Has the injured worker experienced 8 days (cummulative) of lost time or reduced wages as a result of the injury?   yes ☑   no ☐

If yes, the date of the 8th day (mm/dd/yyyy)   5-23-06

18. Date of most recent RTW _____

   ☐ Full duty, full pay

   ☐ Limited duty, full pay

   ☐ Limited duty, reduced pay

19. Has the injured worker resigned, been terminated, or died?   yes ☑   no ☐

date of resignation 5-15-06   date of termination _____   date of death _____

19a. Reason for resignation/termination
stopped working - injured

19b. Was the injured worker on limited duty when terminated? N/A   yes ☐   no ☐

20. Hours the injured worker was working during the pay period of ____
   ____ to ____   40 hours per week

Indicated hours are:
   ☐ Increase from pre-injury
   ☑ Same as pre-injury
   ☐ Decrease from pre-injury

21. Weekly/hourly earnings for the pay period of 5-8-06
   to 5-15-06   $ 600 weekly   of $ ____ hourly

Indicated wages are:
   ☐ Increase from pre-injury wage
   ☑ Same as pre-injury wage
   ☐ Decrease from pre-injury wage

**This form to be filed with:**   The employer's insurance carrier and the injured worker in the timeframe as noted in Part II.

22. To the best of my knowledge, the information provided in this report is accurate and may be relied upon for evaluation of eligibility for benefits.

Submitted by:   ☑ Employer   ☐ Injured Worker (if no longer working for the employer where injury occurred)

Signature and title of person completing this form   OFFICE MANAGER

Date   6-13-06

TWCC-6 (Rev 2/06)  Page 1

TEXAS WORKERS' COMPENSATION COMMISSION

877-404-7999

| TWCC CLAIM # |
| CARRIER'S CLAIM # |

# EMPLOYER'S FIRST REPORT OF INJURY OR ILLNESS

| 1. Name (Last, First, M.I.) | Jorge Toya | 2. Sex: F ☐ M ☑ | 16. Date of Injury (m/d/y) 5-15-06 | 17. Time of Injury | 1. Date Lost Time Began 5-15-06 |

| 2. Social Security Number | 4. Home Phone | 5. Date of Birth (m/d/y) 11-30-1961 | 18. Hours of Injury | 19. Part of Body Injured or Exposed Face |

| 6. Does the Employee Speak English? If No, Specify Language | YES ☐ NO ☑ Spanish | 20. How and Why the Injury/Illness Occurred was pulling a pipe w/ a rope, the rope snapped and hit him in the face. Injured from cheek to his eye |

| 7. Race: White ☐ Black ☐ Hispanic ☑  Asian ☐  Native American ☐  Other ☐ | 21. Was employee doing his regular job? YES ☑ NO ☐ | 22. Worksite Location of Injury (state, city, etc.) |

| 8. Mailing Address Street or P.O. Box: 8901 June Rd # 807 Harris | 23. Address Where Injury or Exposure Occurred Name of business if incident on a business site |

| City Hou  State TX  ZIP Code 77065  County | Street or P.O. Box CArpenter Road Radisson, New York |

| 10. Marital Status: Married ☑ Widowed ☐ Separated ☐ Single ☐ Divorced ☐ |

| 11. Number of Dependent Children | 12. Spouse's Name Juana Hernandez | City Radisson  State New York  ZIP Code |

| 13. Doctor's Name N/A | 24. Cause of Injury (fall, tool, machine, etc.) Rope |

| 14. Doctor's Mailing Address (Street or P.O. Box) N/A | 25. List Witnesses Jorge Zarco |

| City  State  ZIP Code N/A | 26. Return to work date/or ability used (m/d/y) 5-22-06 | 27. Did employee die? YES ☐ NO ☑ | 23. Supervisor's Name Jorge Zarco | 24. Date Reported (m/d/y) 5-15-06 |

| 30. Date of Hire (m/d/y) 5-8-06 | 31. Was employee hired or recruited in Texas? YES ☑ NO ☐ | 32. Length of Service in Current Position 3 weeks | 33. Length of Service in Occupation 2 years |

| 34. Employee Payroll Classification Code |

| 35. Rate of Pay at this Job $ N/A Hourly $ 600.00 Weekly | 37. Full Work Week ☐ HD Hours N/A Days | 36. Last Paycheck Date 5-26-06 | $ 600 for 1 week Hours or Days | 38. Is employee an Owner, Partner, or Corporate Officer? YES ☐ NO ☑ |

| 40. Name and Title of Person Completing Form Amy Soliz - OFFICE MANAGER | 41. Name of Business A&A Cable Contractors, Inc |

| 42. Business Mailing Address and Telephone Number  Street or P.O. Box 12506 Ann Lane  Telephone 281.469.2888 | 43. Business Location (if different from mailing address) Number and Street 12506 Ann Lane |

| City Hou  State TX  ZIP Code 77064 | City Hou  State TX  ZIP Code 77064 |

| 44. Federal Tax Identification Number 76-0648286 | 45. Primary Business Industrial Classification (SIC) Code (4 digit) | 46. Specific SIC Code (4 digit) | 47. Texas Comptroller Taxpayer No. 3-20025-1204-7 |

| 48. Workers' Compensation Insurance Company Texas Mutual Insurance Company | 49. Policy Number TSF-0001130442 00 |

| 50. Did you request accident prevention services in last 12 months? YES ☐ NO ☐ If yes, did you receive it? YES ☐ NO ☐ NOT sure |

| 51. Signature and Title (READ INSTRUCTIONS ON INSTRUCTION SHEET BEFORE SIGNING) X _____ OFFICE MANAGER  Date 5-30-06 |

TWCC (24)
2/13/01

Rule 120.2

TWCC

**ORIGINAL: TO INSURANCE CARRIER      COPY: TO EMPLOYEE      COPY: TO EMPLOYER**

RECEIVED TIME MAY. 31.  2:50PM

EXHIBIT "4"

∴MasTec                                    Subcontractor Agreement No.:

## SUBCONTRACTOR AGREEMENT

AGREEMENT dated as of the Effective Date between the contractor ("Contractor") and the subcontractor identified on Schedule 1 to this Agreement **A & A Cable Contractors Inc.** ("Subcontractor").

In consideration of the mutual covenants and promises contained in this Agreement, Contractor and Subcontractor agree as follows:

1.    Subcontractor will perform the scope of Work as Contractor's subcontractor under the Primary Contract at the Primary Contract Location, all as described on Schedule 1. Subcontractor will perform the Work in accordance with the terms of this Agreement and the Primary Contract, the terms of which are incorporated into this Agreement by reference to the extent not inconsistent with the terms of this Agreement.

2.    Subcontractor will exercise the same degree of care, skill and diligence in the performance of the Work as is ordinarily exercised by other subcontractors in the industry, but in any event not less than is required of Contractor under the Primary Contract. Subcontractor warrants (a) that the Work complies with all diagrams, drawings, plans, specifications and other documentation, information or requirements regarding the Work under the Primary Contract ("Specifications") and that it is free of all deficiencies and defects in workmanship, and (b) that all materials or equipment supplied by Subcontractor complies with all Specifications and is new and fit for its intended purposes, unless otherwise described in the Specifications. In addition, Subcontractor warrants the Work performed by Subcontractor to Contractor and Owner to the same extent as Contractor warrants the same Work to Owner under the Primary Contract. Subcontractor will immediately repair or replace any defective Work or materials or equipment that in Contractor's or Owner's reasonable judgment is defective or deficient or does not meet the Specifications, or that Subcontractor damages or destroys in carrying out its obligations under this Agreement, without any additional compensation. All Work will be performed to the satisfaction of Contractor and Owner, whose determination will be final and binding on Subcontractor. Subcontractor will cooperate and coordinate with all other contractors, subcontractors, and suppliers so as not to delay or hinder the performance of their work under the Primary Contract.

3.    Contractor will provide Subcontractor, from time to time, with a schedule for completion of all or a portion of the Work, which schedule may be revised as the Work progresses without additional compensation to Subcontractor. Contractor may at any time require Subcontractor to alter the schedule with respect to the order of completion of

*A·c·*
SUBCONTRACTOR INITIALS

Page 1 of 1

# ⠂MasTec

**Subcontractor Agreement No.:**

particular segments of the Work, or to stop work altogether or to suspend performance of this Agreement, or to recommence work, without additional compensation or any extension of the schedule for completion. Timely completion of the Work in accordance with the schedule for completion is of the essence of this Agreement, and failure to comply with the schedule will be grounds for (a) reduction of any compensation payable to Subcontractor under this Agreement, (b) immediate termination of this Agreement by Contractor, without prejudice to Contractor's remedies under this Agreement or under law or (c) any other remedies provided for under paragraph 15 of this Agreement or as provided for under applicable law. The hours of Work and the days upon which Subcontractor will perform the Work will be solely within the discretion of Subcontractor, consistent with the schedule of Work, this Agreement and the Primary Contract. Subcontractor will provide Contractor with such reports and other evidence of the progress of the Work as Contractor will reasonably request. Contractor may inspect the Work at all reasonable times without notice to Subcontractor.

4.    Contractor may direct Subcontractor, in writing, to make changes to the Work. Adjustments, if any, in the contract price or the schedule of Work resulting from such changes will be set forth in a written Subcontract Change Order, in compliance with the Primary Contract. All Change Orders must be approved in writing by an authorized officer of Contractor and Owner in order for Subcontractor to receive compensation for the work performed. Under no circumstances may additional compensation be due Subcontractor unless such compensation is obtainable under the Primary Contract. Subcontractor may not suspend the performance of this Agreement pending review and approval of any Change Order or for any other reason.

5.    All Specifications and all other materials, documentation or information regarding the Work, the Primary Contract, the Owner or the Contractor supplied to or obtained by Subcontractor from Contractor or its representatives, or that Subcontractor prepares or creates or causes to prepare or create specifically related to the Work (collectively, the "Information"), is the sole property of Contractor, and Subcontractor may use such Information solely for purposes of completing the Work in accordance with the terms of this Agreement.    Subcontractor will execute and deliver any documentation necessary or desirable to vest indefeasibly title to such Information in Contractor. Such Information will be considered confidential, and Subcontractor may not release or disclose such Information to any person or entity without Contractor's prior written consent. Subcontractor may not use, and acquires no interest of any kind in, Contractor's or Owner's name, trademarks, or other intellectual property of any kind, except as specifically permitted in writing.

6.    Subcontractor will be responsible for any permits, licenses or other authorizations necessary for Subcontractor to perform the Work, copies of which will be provided to Contractor upon request. To the extent required of Contractor under the Primary Contract for the scope of Work under this Agreement, Subcontractor will be responsible for obtaining

SUBCONTRACTOR INITIALS

Page 2 of 2

**⁜MasTec**                                    **Subcontractor Agreement No.:**

other permits, licenses and authorizations for the project specified in the Primary Contract. Subcontractor will comply with the requirements of all such permits, licenses and authorizations.

7.    Subcontractor at its expense will supply all labor, tools, equipment, vehicles, fuel and other materials and will provide all transportation, storage and other facilities necessary to properly perform the Work, other than as specified in the Primary Contract or the Specifications.    Any materials supplied by Subcontractor must meet the standards established by Contractor or Owner under the Primary Contract.    Subcontractor will be responsible for the condition and safekeeping of any tools, equipment, vehicles, materials or other tangible assets ("Assets") provided by Subcontractor or provided to Subcontractor by Contractor, Owner or another subcontractor in connection with the Work, and will return such Assets to their rightful owner (to the extent not used in completing the Work) upon completion of the Work. Subcontractor will maintain the Assets used in connection with the Work in good operating condition, repair, and appearance, and protect the same from deterioration, other than normal wear and tear, and will use the Assets in the regular course of business only within its normal capacity, without abuse, and in a manner contemplated and recommended by the manufacturer. Any Assets that are loaned or rented to Subcontractor, will be the sole responsibility of Subcontractor, who will be responsible for adequately insuring said Assets in accordance with the requirements of this Agreement.

8.    Subcontractor and its employees and agents will observe all safety, nondiscrimination, equal employment, drug and alcohol, business ethics and other rules and policies of Contractor and Owner and all applicable laws, rules and regulations of any governmental authority in performing the Work, including without limitation those relating to safety and health, the environment, and labor and employment (collectively, "Requirements"). If required by the Primary Contract or by Contractor's or Owner's policies and procedures, Subcontractor will conduct drug or alcohol testing and will conduct background checks on Subcontractor's employees. Subcontractor acknowledges and agrees to fully comply with the provisions of Federal Labor Provisions (PR 1273), Notice of Affirmative Action (Executive Order 11246) (43 FR 14895) and Standard Federal EEO Specifications (Executive Order 11246) (43 FR 14895), to the extent applicable. Contractor or Owner will have the right to audit Subcontractor's compliance with the Requirements and the other requirements of this Agreement and the Primary Contract at any time, and Subcontractor will provide any documentation requested by Contractor or Owner and will otherwise cooperate in the conduct of such audits. Contractor may direct Subcontractor to stop all Work until Contractor has determined that Subcontractor is in compliance with the Requirements.

9.    Subcontractor is engaged as an independent contractor and is not an agent or employee of Contractor.    Subcontractor acknowledges that Contractor may engage other subcontractors or agents to carry out a portion of the Work or other work related thereto.

                                         *A.S.*
                                    _____
                                    SUBCONTRACTOR INITIALS

# ⋅MasTec

**Subcontractor Agreement No.:**

Subcontractor further acknowledges that it may not contract with the Owner to provide the same or similar services as provided in this Agreement during the term of this Agreement, including any applicable warranty periods. Subcontractor may not delegate or further subcontract any of the Work without the prior written consent of Contractor. Subcontractor has full control and supervision of the performance of the Work. Contractor or Owner may deny access to the Work site to any employee or other agent of Subcontractor who is not in compliance with the requirements of this Agreement, the Primary Contract, or the Requirements. Subcontractor is responsible for scheduling Subcontractor's personnel, subject to the Contractor's schedule of completion and other requirements. Subcontractor is solely responsible for payment of all compensation and benefits to its employees and others engaged by it to perform the Work and for all workers' compensation, unemployment compensation, health, life and disability insurance, social security and income tax withholding, and all other federal, state and local withholding taxes or other taxes, withholdings and payments due on account of such compensation. Contractor or Owner may require Subcontractor to submit payroll records to Contractor. Subcontractor will not solicit, attempt to solicit or engage directly or indirectly (either as an employee, officer, director, partner, shareholder, consultant, or independent Subcontractor) those customers of Contractor with whom Contractor has contracted, for the purposes of providing or offering to provide the same and/or similar services or products.

10.    Subcontractor acknowledges that it has (a) visited the site(s) where the Work is to be performed and visually inspected and is familiar with the general and local conditions which could affect the Work, and (b) reviewed the terms and conditions of the Primary Contract, including the Specifications. Subcontractor assumes the risk of the condition of the site(s) where the Work is to be performed. Neither Contractor nor Owner guarantees the accuracy of any information concerning the work site(s) or other conditions applicable to the Work. Subcontractor will remove at its expense any trash, debris and surplus materials left over or resulting from the performance of the Work. Subcontractor is responsible for any damage to property caused directly or indirectly by Subcontractor or its agents or representatives, including approved subcontractors.

11.    Upon final acceptance of the Work by Contractor and Owner, Contractor will pay Subcontractor for the Work at the prices and schedule and in the manner described in Schedule 1; provided that, all payments to Subcontractor by Contractor are expressly contingent upon and subject to receipt of payment for the Work by Contractor from Owner, even if (a) Contractor has posted a payment bond with Owner or (b) the Primary Contract is on a "cost plus" or other reimbursement basis requiring the Contractor to pay subcontractors prior to being reimbursed by Owner. Notwithstanding the provision by Contractor of a payment or other bond, letter of credit or other security securing or guaranteeing payment to Subcontractor, Subcontractor will not make any claim against such bond or letter of credit or other security unless and until Owner has paid Contractor in full for the Work performed by

_A -°._
SUBCONTRACTOR INITIALS

# ⋅MasTec

**Subcontractor Agreement No.:**

Subcontractor. Subcontractor will cooperate fully with Contractor in supplying any documentation required by Owner to release payments to Contractor, including receipts and releases of liens. Contractor may retain from any payments due to Subcontractor the same percentage that is retained by Owner from payments to Contractor under the Primary Contract, to the same extent retained by Owner. Upon request by Contractor and in connection with any payment, Subcontractor will provide a complete and current list of all Subcontractor's subcontracts and purchase orders, the price of each subcontract and purchase order, the date of the most recent invoice on each, the date of the most recent payment on each, the current amount due and owing on each subcontract and purchase order and a general release and waiver of all liens from all subcontractors and suppliers. Any payment will constitute full and complete payment for all Work performed by Subcontractor and identified in Subcontractor's invoice, but will not constitute acceptance of any defective work or materials. Contractor will not be obligated to pay for any work or materials not included in the description of the Work or any properly authorized Change Order. Contractor may offset against amounts due to Subcontractor under this Agreement or otherwise any amounts determined by Contractor to be due from Subcontractor under this Agreement, the Primary Contract or otherwise. Contractor may make direct or joint check payments to the Subcontractor and the Subcontractor's suppliers and/or subcontractors. Contractor's periodic payment to Subcontractor neither constitutes nor implies approval or acceptance of the Work.

12.    Subcontractor warrants that it has sufficient funds and credit to pay currently all bills incurred in the performance of the Work without the necessity of resorting to earnings for work performed hereunder, and agrees that failure to pay such bills will be a breach of this Agreement for which Contractor may terminate this Agreement or may, but is not required to, withhold all sums otherwise payable under this Agreement for past and future earning until Subcontractor presents satisfactory evidence of payment, and in case any such bill or claim is disputed by Subcontractor, Contractor may, for the purposes of this Agreement consider the same to be valid until discharged and released or until satisfactory security is given for Contractor's indemnification. At Contractor's option, Contractor may, but will not be required to, pay any such bill or claim and recover the same from Subcontractor or any surety or deduct the same from any payments (progress or retainage) otherwise due hereunder. Any and all payments made in good faith in the belief that Contractor is liable, whether liable or not, will be conclusive of Contractor's right to reimbursement, and a sworn itemized statement thereof or the checks or other evidence of payment will be conclusive evidence of the fact and extent of Subcontractor's liability to Contractor.

13.    Subcontractor waives any rights that it may have under applicable law to file mechanic's, materialman's or other similar liens against Contractor or Owner, or against the Work or the project covered by this Agreement or the Primary Contract, and will promptly discharge any liens filed by any of its employees, agents or independent contractors, if any. At Contractor's request, Subcontractor will provide (a) a release in a form acceptable to

_A_ _O_.
SUBCONTRACTOR INITIALS

Page 5 of 5

# ⁙MasTec

**Subcontractor Agreement No.:**

Contractor of any mechanic's or materialman's liens in connection with the Work, and (b) an affidavit disclosing the identity and address of all persons or entities that have supplied materials or labor in connection with the Work and releases in a form acceptable to Contractor from any of such persons or entities. Contractor will have the right to make payments directly to such persons and entities. In addition to the requirements of paragraph 11, final payment to Subcontractor is contingent upon Subcontractor delivering the releases and affidavits contemplated by this paragraph.

14.     Subcontractor will provide and maintain at its own expense the minimum insurance coverages set forth on Schedule 2 with such insurance companies and in such form as will be satisfactory to Contractor and Owner. If required by the Primary Contract, Subcontractor will provide such additional insurance coverages as is required by Owner under the Primary Contract. All insurance required under this Agreement must be on an "occurrence" basis and not on a "claims made" basis. Subcontractor, prior to commencement of any Work, will provide Contractor with certificates of insurance evidencing the coverages required by this Agreement in a form acceptable to Contractor, which certificates will also provide that (a) Contractor is named as an additional insured under the insurance policies required by this Agreement, and (b) the insurance carrier must provide thirty (30) days prior written notice to Contractor of any cancellation of or material modification of such insurance policies. The maintenance of the insurance required by this Agreement will not relieve Subcontractor of any liability to Contractor under this Agreement or otherwise. The required insurance certificates will be furnished to Contractor at the address set forth on the first page of Schedule 1 and to:

> Risk Manager
> MasTec North America, Inc.
> 3155 N.W. 77th Avenue
> Miami, FL 33122

In addition to the foregoing insurance, Contractor may require Subcontractor to obtain at Subcontractor's expense a performance or payment bond in such amount and form and with such bonding companies as Contractor may determine. Any such bonding requirement will be specified in Schedule 2. In the alternative, Contractor may require Subcontractor to pay a pro-rata portion of the premium on any bond required of Contractor by Owner under the Primary Contract.

15.     Subcontractor will indemnify, defend and hold harmless Contractor and Owner and their respective officers, directors, stockholders, affiliates, employees, agents, subcontractors, independent contractors and other representatives (collectively, the "Indemnitees") from and against all claims, damages, liabilities, losses, penalties, injuries, and expenses (including attorneys' and paralegal fees and court costs and including penalties

_A. S._
SUBCONTRACTOR INITIALS

**⁘MasTec**                                    **Subcontractor Agreement No.:**

and interest) incurred or suffered, directly or indirectly (including consequential, punitive and other special damages) (collectively, "Damages"), by the Indemnitees and arising out of or resulting from, directly or indirectly, the performance or quality of the Work, the materials supplied by Subcontractor, or from any breach of this Agreement or the Primary Contract by Subcontractor, or from any other action or omission of Subcontractor, including, in all such cases, Subcontractor's officers, directors, stockholders, affiliates, employees, agents, subcontractors, independent contractors, invitees or others under its direction or control. Further, Subcontractor will indemnify, defend and hold harmless the Indemnitees to the fullest extent that Contractor is required to indemnify, defend and hold harmless Owner under the Primary Contract. In addition to any other rights of Contractor under this Agreement, upon a breach of this Agreement by Subcontractor or failure by Subcontractor to comply with the terms of this Agreement, Contractor may (a) terminate this Agreement immediately without further notice, (b) undertake to correct Subcontractor's breach or failures either directly or through other contractors, all for the expense and at the risk of Subcontractor, and (c) offset against amounts due to Subcontractor any Damages suffered or incurred by Contractor as a result, directly or indirectly, of Subcontractor's breach or failures.

16.    If the Primary Contract to which this Agreement refers is terminated, suspended or delayed for any reason, this Agreement will be terminated, suspended or delayed on the same basis and upon the same effective date as the termination, suspension or delay of the Primary Contract. Upon such a termination, suspension or delay of this Agreement, Subcontractor will only be entitled to recover from Owner or Contractor such amounts as are payable to Contractor for the portion of the Work completed by Subcontractor, less Contractor's anticipated gross profit from the Work. Subcontractor is not entitled to mobilization, start-up, demobilization or other amounts, or consequential, special, incidental, liquidated or punitive damages, or for commercial loss or lost profits, unless such amounts or damages are awarded to Contractor, in which case Subcontractor may recover such amounts or damages for the portion of the Work completed by Subcontractor less the same percentage constituting Contractor's gross profit retained by Contractor from all other amounts payable by Owner. Subcontractor will not be entitled to any other remedy for a termination, suspension or delay under this Section 16 including any amounts directly from Contractor.

17.    In addition to all other legal rights or remedies which Contractor may have available to it in law or equity, Contractor may terminate this Agreement immediately at any time because of (a) the failure of Subcontractor to perform the Work diligently, promptly and efficiently or in accordance with the schedule of Work, (b) a breach by Subcontractor of the provisions of this Agreement or the Primary Contract, or (c) if Subcontractor becomes insolvent, is unable to pay its debts as they come due, makes a general assignment for the benefit of creditors, files a voluntary petition in bankruptcy or for reorganization or has filed against it an involuntary petition, or takes any other similar action.  Contractor may also terminate this Agreement at

SUBCONTRACTOR INITIALS

# ❧MasTec

<div align="right">Subcontractor Agreement No.:</div>

any time upon giving ten (10) days written notice to Subcontractor. Upon termination of this Agreement for any reason, Subcontractor will immediately cease all work and vacate the job site, and will return all Assets supplied by Contractor, Owner or other subcontractors. Contractor may offset against any amounts due to Subcontractor by Contractor under this Agreement or any other agreement between Contractor or any of its affiliates and Subcontractor the amount of any losses, claims or other damages recoverable by Contractor from Subcontractor under this Agreement or otherwise.

18.    Without limiting the survivability of other provisions of this Agreement, Subcontractor's obligations set forth in paragraphs 1, 3, 5, 7, 9, 11, 12, 14-17 and Schedule 1 will survive expiration or termination of this Agreement for any reason.

19.    Any notice required by this Agreement will be effective and deemed delivered (a) three (3) business days after posting with the United States Postal Service when mailed by certified mail, return receipt requested, properly addressed and with the correct postage, (b) one (1) business day after pickup by the courier service when sent by overnight courier, properly addressed and prepaid or (c) one (1) business day after the date of the sender's electronic confirmation of receipt when sent by facsimile transmission. Notices must be sent to the addresses or facsimile numbers set forth on Schedule 1, unless either party notifies the other in writing of an address or facsimile number change, which change will take effect three (3) business days after receipt (as defined in the preceding sentence) of the change by the receiving party.

20.    This Agreement: (a) inures to the benefit of and is binding upon the parties and their respective successors and permitted assigns; (b) may not be assigned or subcontracted or any of the duties set forth in this Agreement delegated or subcontracted except that Contractor may assign and delegate its rights and obligations under this Agreement to any affiliate of Contractor; (c) contains the entire agreement of the parties and supersedes any earlier or contemporaneous understanding or agreement; (d) may not be amended except by a writing signed by each of the parties; (e) may not be modified or waived unless in writing, and signed by a duly authorized representative of each party; and (e) is governed by the laws of the state of Florida, without regard to its conflict of laws rules.

21.    Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction will, as to that jurisdiction, be ineffective to the extent of the prohibition or unenforceability without invalidating the remaining provisions of this Agreement and any prohibition or unenforceability in any jurisdiction will not invalidate or render unenforceable the provision in any other jurisdiction. To the maximum extent permitted by applicable law, the parties to this Agreement waive any provision of law that renders any provision of this Agreement prohibited or unenforceable in any respect.

<div align="right">
A. S.

SUBCONTRACTOR INITIALS
</div>

.:MasTec                                          **Subcontractor Agreement No.:**

22.   No failure or delay of Contractor or Owner in exercising any power or right under this Agreement or the Primary Contract will operate as a waiver thereof, nor will any single or partial exercise of any such right or power, or any abandonment or discontinuance of steps to enforce such a right or power, preclude any other or further exercise thereof or the exercise of any other right or power.

23.   Nothing in this Agreement will be deemed to create a joint venture or partnership between the parties.

24.   If any legal proceeding is brought to enforce or interpret this Agreement or any provision thereof, the prevailing party in any such proceeding will be entitled to recover from the other party its reasonable attorneys' and paralegal fees and court costs, before and at trial and at all appellate levels.

25.   WAIVER OF JURY TRIAL. CONTRACTOR AND SUBCONTRACTOR KNOWINGLY, VOLUNTARILY, IRREVOCABLY, UNCONDITIONALLY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PERSON OR PARTY AND RELATED TO THIS AGREEMENT; THIS IRREVOCABLE WAIVER OF THE RIGHT TO A JURY TRIAL BEING A MATERIAL INDUCEMENT FOR CONTRACTOR AND SUBCONTRACTOR TO ENTER INTO THIS AGREEMENT.

26.   Additional terms and conditions applicable to this Agreement, if any, are set forth on Schedule 1.

A.S.

SUBCONTRACTOR INITIALS

❖MasTec                                    **Subcontractor Agreement No.:**

EXECUTED: _____, 2006

**CONTRACTOR: MasTec North America, Inc.**

By: _____
Name:  Mark Frosaker
Title:    Division Vice President

**SUBCONTRACTOR:  A & A Cable Contractors Inc.**

By: _____
Name:  Andres Cruz
Title:    President

A ᴄ⟋
SUBCONTRACTOR INITIALS

Page 10 of 10

# ⫶MasTec

**Subcontractor Agreement No.:**

## Scope of Work:

This is not an exclusive contract. Nothing in the contract shall be construed as requiring Contractor to assign all or any specific portion or amount of work specified in this contract exclusively to the Subcontractor. Furthermore, this Subcontractor Agreement is not a guaranty of work volume and Contractor shall not be responsible for losses incurred due to the number or size of work orders issued. No act oral or written by the Contractor shall be considered a waiver of this provision.

Subcontractor shall provide all manpower and equipment to perform directional drilling services in the Counties of New York and surrounding areas upon receipt of a Work Order. Subcontractor agrees to perform the work operations per Owner specifications (including but not limited to the attached Pirelli Underground Cable Installation Practices and Ultra-Bond EM4BDV-22 Ground Rod Connector) and further agrees to complete the work based on the due date provided on the Work Order. Subcontractor additionally agrees to complete the work per the items listed below.

_General Requirements_

- Subcontractor shall be responsible for video taping the entire project assigned before and after construction. Subcontractor must provide a copy of the pre-construction video tape to the contractor.
- Subcontractor is responsible for calling in locates prior to construction. Also providing locate tickets to the Contracting Division representative.
- Subcontractor is responsible for distributing door knockers 48 hours prior to construction.
- Subcontractor is responsible for providing a single point of contact from start to finish.
- Subcontractor is responsible for property and utility damages, and must notify Contracting Division immediately of any damage.
- Subcontractor is responsible for OSHA, City, State, and MasTec safety rules. Subcontractor must have daily tailgate meetings and weekly safety meetings.
- Subcontractor is responsible for all restoration, including material costs, cleanup must remain within 500 feet of placing.
- Subcontractor is responsible for placement guidelines, minimum 24" depth, unless a deviation is approved in writing by the Contractor and Owner.
- Subcontractor is responsible for reporting all Verizon material received and used on a weekly basis.
- Subcontractor is responsible for all traffic control.
- Subcontractor is responsible for all as-builts per MasTec and Verizon specifications.
- Subcontractor is responsible for repairing all sprinkler damages and using a qualified person to

_A S._
SUBCONTRACTOR INITIALS

**∻MasTec**                                    **Subcontractor Agreement No.:**

complete these repairs.
- Subcontractor is responsible for pickup of all material and storage of material. Excessive waste of material will be billed back to Subcontractor.
- Subcontractor is responsible for notifying Contracting Division of any change order issues or engineering issues.
- Subcontractor is responsible for daily and weekly reporting of quantities.
- Subcontractor is responsible for responding to complaints within 24 hours.
- Subcontractor is responsible for placement of conduit and handholes in rock if encountered.

## Boring

- Subcontractor is responsible for supplying sufficient crews to support each bore rig.
- Subcontractor is responsible for adhering to specific depths and following the Verizon provided and approved plans.
- Subcontractor responsible for keeping streets clean on a daily basis, and before leaving each day. NO BORE MUD ON THE STREETS.
- Subcontractor is responsible for using plywood while unloading and loading equipment and while parked in the yard. Subcontractor is responsible for using tarps for temporary placement of soil on yards or roads and for R&R of sod where possible.
- Subcontractor is responsible for verifying all utilities by pothole method. Potholes in soft surfaces are included in the composite price. Potholes in asphalt or concrete must be approved prior to excavation and all permits must be secured by the Owner.
- Subcontractor is responsible for securing all open potholes and pits with safety fence and wooden stakes. Must remain neat and tight.
- Subcontractor is responsible for water meter location and protection.
- Subcontractor is responsible for disposing of bore mud at an approved dump site.
- All persons working on a bore crew must have dielectric boots.

## Handholes / Splice Boxes

- Subcontractor is responsible for compaction, leveling, and aligning with curb or sidewalk.
- Subcontractor is responsible for installing in an area that will not disrupt existing utilities or the flow of the general public.
- Subcontractor is responsible for disposal of excess dirt.
- Subcontractor is responsible for installation of handholes per Verizon prints and specifications.

A_"
SUBCONTRACTOR INITIALS

# ꞏMasTec

<div align="right">Subcontractor Agreement No.:</div>

- This is a work order based contract; such that, the subcontractor shall not commence any work prior to receiving a written work order from an authorized Contractor representative.

A Subcontract Work Order shall be supplied by Contractor to the Subcontractor prior to the commencement of any work. The work order shall provide the location and nature of the work to be performed; and shall include:

1. Subcontract Number
2. Work Order Number
3. Work Order Due Date
4. Scope of Work
5. Estimated Unit Quantities (if available)
6. Construction Prints
7. Materials to be supplied by Contractor
8. Any other work specifications

Work order acceptance shall be when the Contractor receives a signed copy of the work order from the Subcontractor. Upon acceptance of the work order the subcontractor shall be bound by all the terms and conditions of this Subcontractor Agreement. Additionally, the Subcontractor shall maintain daily communication with the Contractor point of contact on project status.

In the case of work additions or deletions, the Subcontractor must gain prior written approval from the Contractor point of contact.

Invoices shall be submitted on a weekly basis for work completed the previous week. Subcontractor shall submit to the Contractor red-line drawings clearly indicating the quantity of work completed. Contractor reserves the right to request other documentation relevant to the work completed.

<div align="right">

SUBCONTRACTOR INITIALS
</div>

<div align="center">Page 14 of 14</div>

# ⚘MasTec

**Subcontractor Agreement No.:**

**Terms:**

- Net 15 with 10% retainage withheld on each invoice up to a maximum of $10,000.

Subcontractor shall submit invoices weekly containing the following information:

Contractor shall contain the following:

1. Subcontract Number
2. Work Order Number
3. Customer Job Number
4. Location of Work
5. Unit Items, Quantities, Pricing, and Extended Totals
6. Other Associated Information

Contractor and the Subcontractor agree that the price to be paid for work performed and services to be rendered shall be consistent with the pre-established unit rates listed in the Pricing section.

At times, Contractor may verbally instruct Subcontractor to proceed with work prior to issuing a Work Order due to emergency situations or to meet the immediate demands of the Owner. When a verbal authorization is provided to Subcontractor, Subcontractor will proceed as if a written Work Order had been issued and all work will be completed per the terms and conditions of this Subcontractor Agreement. A written Work Order will be issued by Contractor to Subcontractor the next business day.

A .S(.
SUBCONTRACTOR INITIALS

Page 15 of 15

# ◈MasTec

<div align="right">

**Subcontractor Agreement No.:**

</div>

**Pricing:**

## 2006/2007 Prices for Syracuse, New York Capital Upstate FTTP

### EXHIBIT A    FTTP Pricing Schedule

| Region | Wire Center | 1.25" or 2.0" | (- 6") 18 – 23.99" | (+6") 30 – 35.99" | Add'l 6" | 1ˢᵗ add'l Duct | + 1 Duct | Handhole 17 x 30 (labor) | Handhole 24 x 36 (labor) | Flowerpot 15" round (labor) |
|--------|-------------|---------------|--------------------|-------------------|----------|----------------|----------|--------------------------|--------------------------|------------------------------|
| | | | | OVERLAY at 24" cover at any depth | | | | | | |
| New York – Syracuse | All | $5.00 | N/A | N/A | N/A | $0.80 | $0.50 | $40.00 | $55.00 | $15.00 |

| Region | Wire Center | Pedestal - New (labor) | Pedestal - Live (labor) | Handhole 15 x 20 (labor) |
|--------|-------------|------------------------|-------------------------|--------------------------|
| | | OVERLAY at 24" cover at any depth | | |
| New York – Syracuse | All | $25.00 | $50.00 | $30.00 |

Initial rate does not include terminations; please see terminations in additional adders

| Region | Wire Center | 1.25" | (+6") 24 – 29.99" | |
|--------|-------------|-------|-------------------|--|
| | | DROP 18" cover | | |
| New York –Syracuse | All | $1.50 | $0.13 | |

Buried Pathway Creation methodology is the choice and responsibility of the Contractor and includes placement by any means necessary. Placement by any means necessary includes completion of the Pathway placement within the required timeframes avoiding damage to and with minimal disruption to private and public facilities and restoration of same. The Selected Contractor shall not invoice MasTec and MasTec shall not pay for additional charges associated with the Suppliers path creation selection method

MasTec will pay for additional depth or duct when denoted on the EWO or authorized by Verizon in advance.

<div align="right">

*A - ˀ*

_____
SUBCONTRACTOR INITIALS

</div>

# ⁘MasTec

**Subcontractor Agreement No.:**

<u>NY - Capital Upstate ONLY</u>

**ALL Adders must be approved by a Verizon representative!**

Rock Removal- Rock is defined as any material which requires additional equipment such as an air hammer or rock saw to be removed from trench. Any material which can be removed with a backhoe is not to be considered rock. Disposal of all materials is included. Rock is measured in place. Loose rock is defined as rocks greater than 6" within 50% of the excavated area. Rock removal adder cannot be taken with the loose or Solid rock adders.

| | |
|---|---|
| Rock removal | $87.50 per cubic yard. |
| Loose rock, Compacted stone, Shale | $ 1.40 per Lin Ft |
| Solid Rock | $ 3.50 per Lin Ft |

| Description | Unit | Price |
|---|---|---|
| **Controlled Density Fill (Flowable Fill)** | Cu.Yd. | $66.15 |
| **Asphalt Removal up to 4" Thick*** | Sq.Yd. | $ 6.30 |
| **Asphalt Restoration up to 4" Thick *** | Sq.Yd. | $24.50 |
| Sidewalk Removal up to 4" Thick (Concrete) | Sq.Yd. | $7.70 |
| **Sidewalk Restoration up to 4" Thick (Concrete)** | Sq.Yd. | $31.50 |
| **Infrared Curing** | Sq.Yd. | $19.95 |

*Includes asphalt removal beyond MasTec path creation scope (24" width) of work and normal municipal trench restoration requirements. This price includes labor & material. *Disposal of spoils is included.*

Removal of 753 markouts will be part of restoration process to be determined and approved by Verizon on a case by case basis.

| ITEM | UNIT | UNIT PRICE |
|---|---|---|
| Suitable backfill when removing rock | Per Cu. Yd. | $14.00 |

**Earth Excavation (Including backfilling, when sheeting and shoring is *not* required)**

A̲C̲.
SUBCONTRACTOR INITIALS

# ·MasTec

Payment for extra earth excavation, excluding sheeting and shoring, authorized by the Telephone Company to be based on the cumulative cubic yardage of excavated earth, regardless of the number of test pits established. Cubic yardage will be based on the following method of measurement. The depth of the trench as detailed on the plans, the width of the trench shall not exceed 1.5 times the depth, and the length will be a minimum of five feet or as otherwise directed by Verizon.

This item is intended to be used during quality spot inspections as required by Verizon. This item will be paid only when the quality of work being inspected is validated by Verizon personnel.

| *ITEM* | **UNIT** | **UNIT PRICE** |
|---|---|---|
| Up to and including 5' below the surface | Per Cu. Yd. |  |

## Additional Scope of Work Requirements

Restoration is considered an essential part of the overall job and must be scheduled and completed as an integral part of normal work operations.

The Contractor shall properly refill with suitable material any and all excavations made, and shall restore all private property, streets and highways, including adjacent property and structures including but not limited to driveways, fences, sidewalks, etc. to their former condition unless otherwise ordered by the VERIZON Inspector or authorities having jurisdiction over such land, streets, highways, adjacent property and structures.

The contractor must restore within 10 days all jobs otherwise completed during the period April 1st through October 31st. All work the contractor performs during the period of November 1st through March 30th must be restored in a timely manner as weather permits. In no case will the contractor be given more than 60 days to complete this restoration. When exceeding the 10 day restoration requirement the contractor will provide up to 2 days temporary paving at the contractors expense as directed by VERIZON.

The contractor will abide by all road opening and traffic requirements as per Municipal, State and Federal Requirements. Traffic control devices and pedestrian safety will be maintained at all times.

Traffic plates or barriers will be used where necessary, or as directed to be placed by VERIZON. All work areas will be protected as per Municipal Ordinances and all restoration shall be to the satisfaction of Municipal Authorities and VERIZON.

*A.C.*

SUBCONTRACTOR INITIALS

Page 18 of 18

# ᐦMasTec

All road restoration will include restoral of all pavement and road markings.

Price of sidewalk is to include the restoration of adjacent sod, grass, brick, blacktop, etc. Paving will be straight edge cut prior to final restoration.

Sidewalk and driveway are to be saw cut prior to removal. Temporary pavement, if required, is to be 2" compacted (hot when available) and shall be placed no later than the day following the back filling.

All work performed under this contract shall be coordinated with all Municipal and or State authorities involved and the Contractor will be responsible for the protection of all existing public or private utilities and property.

MasTec shall not be obligated to deliver to the Contractor any further work orders if in the judgment of MasTec, the contractor is not capable of performing the work.

Contractors are required to complete all work accepted from MasTec in the time frame detailed to the contractor at the time of issuance of the work. Exceptions must be detailed to MasTec at the time of the work issuance and a determination will be made by MasTec if such exception is acceptable to Verizon's service needs.

Any and all costs associated with the extension of a State or Municipal Permit needed for the performance of a service due to the contractor's inability to perform will be born by the contractor. All costs associated with the extension of a State or Municipal permit due to the inability to perform by VERIZON will be borne by VERIZON

Appropriate caution and work signs and all other required signs will be placed and maintained when and where required throughout the job site until the job is completed. The Contractor will be required to provide adequate protection to all vehicular and pedestrian traffic by means of signs, barricades, warning lights, steel plates, etc. He will provide safe access and egress from all property where any work is being performed. The Contractor will install and maintain barriers around excavations at all times. At night, warning lights shall be used to warn the general public. Adequate vehicle and pedestrian traffic protection will be provided throughout the duration of the contract. The contractor will provide signs, barricades, lights, flagmen, and other control devices to assure full compliance with the provisions of Sub-Chapter 'G' of the New York State's Department of Transportation Manual of Uniform Traffic Control Devices; latest revision (M.U.T.C.D. ISNYCRR—Chapter 11).

The Contractor shall furnish, place and maintain vehicular steel traffic plates over trench and manhole areas. All trenches shall be back filled or steel plated each day and all debris removed from the roadway as directed. All trenches, manholes and work areas will be broom swept as directed by a VERIZON representative. Response time in connection with an emergency condition will be no more

SUBCONTRACTOR INITIALS



**Subcontractor Agreement No.:**

than two (2) hours. The Contractor agrees to arrive at the location with a basic crew ready to work.

All electrical requirements for Outside Plant equipment and facilities or repairs will conform to the National Electrical Code, OSHA, State and Local requirements. <u>Only Licensed Electricians</u> will perform electrical work or repairs for VERIZON. The Electrician is responsible for coordination with the Local Power Utility and all necessary permits required to initiate service to the Outside Plant facility. Bonding and grounding will be done in accordance with VERIZON practices.

The Contractor is required to complete all reports, which may be requested by MasTec

*UNDER NO CIRCUMSTANCES IS ANY EXCAVATION TO BE LEFT UNATTENDED. EXCAVATIONS MUST BE FENCED IN WITH <u>FENCING - NOT BARRICADE TAPE.</u>*

OSHA, State and Local Municipal requirements are to be followed at all times. Safety is always of the utmost importance to VERIZON and MASTEC and violations will be dealt with in the most stringent manner allowed under State Law.

The VERIZON inspector may require test holes to be dug every 500 feet within the buried cable route to verify that depth requirements in have been met. Cost of test holes will be included in the cost of cable placement

The Contractor will contact the owner of the property where the work is to be performed <u>a minimum of 72 hours</u> before starting any work. The Contractor will fill out and place doorknob hangers, on each property that the Contractor will be working on. The Contractor is responsible for making all arrangements with the building contact person prior to building entry at the start of the project.

All underground obstacles will be exposed by hand digging, before crossing if the obstacle is less than two (2) feet deep. The decision to go under or over will be decided by the VERIZON Inspector.

Electric lines, used for driveway lights when cut, will be repaired by the Contractor and shall not be considered as an extra billable item.

All drains known or unknown when cut or removed will be repaired by the Contractor and shall not be considered as an extra billable item.

Stone or dirt drives will be tamped, graded and stoned to the satisfaction of the property owner and the VERIZON Inspector.

Lawn restoration shall include removal of all rocks, roots and debris brought to the surface by placement of buried cable. Contractor shall, tamp, re-grade, roll and apply a 2" minimum topsoil and

SUBCONTRACTOR INITIALS

# MasTec

**Subcontractor Agreement No.:**

seed with a mixture of rye, fescue and bluegrass of a quality comparable to original lawn. (Minimum 25% each) and straw. Or SOD with like material as required by the customer.

### *Contractor shall conform to the following requirements while placing spare duct liner:*

Where a spare duct liner has been placed in a trench with or without copper cable for future Fiber Optic Cable – a plastic warning tape (placed at 12" depth) and a locating wire (placed at 24" depth) will be buried the entire route and price is to be included in the cost of cable placement. Verification of the locating wire conductivity shall be constant during construction and final end verification shall be made and attested to.

The locating of all existing parallel VERIZON cables and service wires along the new cable route will be the responsibility of the Contractor. This cost will be included in all prices and will not be considered an extra billable item. The prints may or may not indicate all existing cables or wires. The Contractor will be required to check with the VERIZON Locating Vendor to determine what cables he may encounter in his route. This must be done at the time the Contractor assumes his locating responsibilities and prior to the start of work. The Contractor will provide his own locating devices.

All tree damage will be the responsibility of the Contractor. Contractor will be liable for and pay any tree damages. Trees are not considered crop damage. Trees and tree roots will be tunneled whenever possible and all cut roots shall be treated with an approved preservative.
*MASTEC WILL NOT PAY FOR ANY TREE DAMAGE RESULTING FROM A*

*CONTRACTOR'S PERFORMANCE HEREUNDER.*

VERIZON may at its discretion reimburse the contractor for costs associated with an arborist if mandated by municipal authorities.

_____
SUBCONTRACTOR INITIALS

**⸱MasTec**                                              **Subcontractor Agreement No.:**

SCHEDULE 2

**(Insurance; Performance Bonds)**

Insurance:

    *Commercial General Liability*

| | |
|---|---|
| General Aggregate | $5,000,000 |
| Products – Completed Operations Aggregate | $2,000,000 |
| Personal and Advertising Injury Liability | $2,000,000 |
| Per Occurrence | $2,000,000 |
| Each Occurrence Limit | $2,000,000 |
| Fire Damage Legal Liability | $50,000 |
| Medical Expense (any one person) | $5,000 |

    *Automobile – Combined Single Limit*    $2,000,000

    *Worker's Compensation and Employers Liability*

| | |
|---|---|
| Workers Compensation | Statutory |
| Employers Liability | |
|     Each Accident | $1,000,000 |
|     Disease – Policy Limit | $1,000,000 |
|     Disease – Each Employee | $1,000,000 |

**Performance Bond: N/A**

**Owner Terms and Conditions:** Incorporated by Reference.

SUBCONTRACTOR INITIALS



# TexasMutual. sm
### Insurance Company

P O BOX 12029, MAIL STOP 813D
AUSTIN TEXAS 78711-2029

OFFICE OF THE GENERAL COUNSEL
Subrogation Department
(512) 224-2711
FAX (512) 224-3353

### FACSIMILE TRANSMISSION

Date:              April 9, 2008

To:                Richard Winograd

Fax No:            ~~(212) 267-1262~~  (212) 267-4262
                   (973) 643-1857

From:              Jesse Saucedo

Re:                Jorge Joya

Our Claim No.:     99G/452359

Number of pages sent: ____30_____ including cover

Comment:   __Copy of contract._____

_____

_____

**If all pages are not received, please call me at (512) 224-2711**

THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMITTAL MAY BE CONFIDENTIAL, MAY SUBJECT TO AN ATTORNEY-CLIENT PRIVILEGE AND IS INTENDED ONLY FOR THE USE OF THE RECIPIENT NAMED ABOVE. IF THE READER OF THIS INFORMATION IS NOT THE INTENDED RECIPIENT OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERY OF THIS INFORMATION TO THE INTENDED RECIPIENTS, YOU ARE HEREBY NOTIFIED THAT THIS IS NOT A WAIVER OF PRIVILEGE AND ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS INFORMATION IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE AND RETURN THE ORIGINAL INFORMATION TO THE SENDER, BY U.S. MAIL, AT THE ABOVE ADDRESS.

MasTec

## Back Charge Handling Fee

As of January 1st, 2006 MasTec, Inc. will be applying a back charge handling fee on all back charges and damage claims. All back charges and damage claims will be subject handling fee of $100.00. This fee will be applied to the back charge or damage claim being processed.

## Back Charges for FedEx Checks

All subcontractors using MasTec, Inc. FedEx account number when receiving their checks will be subject to a $2.00 fee per mailing.

**A & A Cable Contractors Inc.**

Name: Andres Cruz
Title: President

Date: 5-8-06

**MasTec North America, Inc.**

Name: Mark Frosaker
Title: Division Vice President

Date: 5-11-06

MasTec North America, Inc. P.O. Box 70, 152 Park Ave., Shevlin, MN 56676
Phone: 218-785-2171 Fax: 218-785-2198 www.mastec.com

## NONDISCLOSURE AGREEMENT

NONDISCLOSURE AGREEMENT dated as of May 8, 2006, between A & A Cable Contractors Inc. (the "Company") and MASTEC NORTH AMERICA, INC., a Florida corporation ("MasTec").

### RECITALS

Each party to this Agreement has requested or may be receiving from the other party information of a confidential and non-public nature for use by each party and its officers, directors, agents employees and representatives, including financial and legal advisers (collectively, "Representatives") in connection with the evaluation by the parties of a possible transaction between MasTec and the Company (the "Project"). The parties desire to protect the confidentiality of such information in accordance with the terms of this Agreement.

In consideration of the mutual covenants contained in this Agreement, the parties agree as follows:

1.  Confidential Information Defined. The parties acknowledge that, in the course of their consideration of and any concurrent or subsequent discussions between them and their respective Representatives relating to the Project, each party may receive certain non-public and confidential information from or about the other party or its affiliates, including but not limited to technical information, financial information, methods of doing business, business plans and models, pricing and cost information, contract terms and conditions, marketing methods and strategies, names of suppliers, customers, creditors or partners, proposed transactions, market projections, names and compensation of employees and consultants, software programs, and other confidential and proprietary information relating to the Project. All such technical, financial or other business information thus supplied by either party to the other or the other's Representatives is hereinafter called the "Information." Information conveyed orally shall be designated as proprietary or confidential at the time of such oral conveyance. The term "Information" as used herein also includes (i) the fact that the Information has been made available to or is being inspected or evaluated by the receiving party, (ii) the fact that such discussions or negotiations are taking place concerning the Project or other related transactions between the parties, and (iii) any of the terms, conditions or to other facts with respect to the Project or other related transactions, including the status thereof. Any Information supplied by either party to the other prior to the execution of this Agreement shall be considered in the same manner and be subject to the same treatment as the Information made available after the execution of the Agreement.

2.   Exclusions from Definition.  The term "Information" as used herein does not include any data or information that (a) is already known to the receiving party at the time it is disclosed to the receiving party, or (b) before being divulged by the receiving party (i) has become generally known to the public through no wrongful act of the receiving party; (ii) has been rightfully received by the receiving party from a third party without restriction on disclosure and without, to the knowledge of the receiving party, a breach of an obligation of confidentiality running directly or indirectly to the other party hereto; (iii) has been approved for release by a written authorization by the other party hereto; (iv) has been disclosed pursuant to a requirement of a governmental agency or of law without similar restrictions or to the protection against public disclosure, or is required to be disclosed by operation of law; (v) is independently developed by the receiving party without use, directly or indirectly, of the Information received from the other party hereto; or (vi) is furnished to a third party by the disclosing party hereunder without restrictions on the third party's right to disclose the information.

3.   Nondisclosure Obligation.  Each party receiving any Information shall keep such Information, including any portion of the Information which has been incorporated into analyses, compilations, studies, reports or other documents prepared by the receiving party or its Representatives, confidential and shall not disclose such Information, in whole or in part, to any person other than its Representatives who need to know such Information in connection with the receiving party's evaluation of the Project (it being agreed and understood that such Representatives shall be informed by the receiving party of the confidential nature of the Information and shall be required by the receiving party to agree to treat the Information confidentially), except with the prior written consent of the other party hereto or as otherwise permitted hereunder.  Each party will comply with applicable disclosure requirements, including without limitation Regulation FD of the Securities and Exchange Commission, when publicly disclosing any previously non-public material information.  The Information shall be used by the receiving party solely in connection with its evaluation of the Project, and shall not be used for the receiving party's own benefit or for any other purpose.  Nothing in this Agreement shall obligate any party to proceed with any transaction or to complete the Project.

4.   Standard of Protection.  For the purpose of complying with the obligations set forth herein, the party receiving any Information shall use efforts commensurate with those that such party employs for the protection of corresponding sensitive information of its own, and such receiving party shall not be liable for any inadvertent disclosure of Information provided that (a) it has used substantially the same degree of care to avoid disclosing such Information as it uses for its own information of like importance, and (b) upon discovery of any inadvertent disclosure it shall use reasonable efforts to prevent further disclosure of such Information.

—2—

5.   Compliance with Legal Process. If the party receiving any Information is legally requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process or, in the opinion of counsel for such party, by federal or state securities or other statues, regulations or laws) to disclose any Information, such party shall promptly notify the other party of such request or requirement prior to disclosure so that the other party may seek an appropriate protective order and/or waive compliance with the terms of this Agreement. If, however, in the opinion of counsel for the receiving party such party is nonetheless, in the absence of such order or waiver, compelled to disclose such Information or else stand liable for contempt or suffer possible censure or other penalty or liability, then the receiving party may disclose such Information without liability to the other party hereunder.

6.   Ownership; Return of Information. All Information (including tangible copies and computerized, electronic or other versions thereof) shall remain the property of the furnishing party. Within ten (10) days following the receipt of a written request referencing this Agreement and this paragraph from either party furnishing Information hereunder, the receiving party will deliver to the furnishing party all materials (including tangible copies and computerized, electronic or other versions thereof) containing or embodying the Information received from the furnishing party, including any analyses, compilations, studies or other reports or documents which reflect the Information, together with a certificate executed by the receiving party certifying that all such materials in the receiving party's possession have been delivered to the furnishing party.

7.   No Representations. The parties each acknowledge that neither party is making any representations or warranties regarding any of the Information supplied by a party or the accuracy or completeness of such Information, and neither party shall have any liability to the other party from the use of Information supplied under this Agreement.

8.   Remedies for Breach. Each party acknowledges that a breach or threatened breach of this Agreement would result in irreparable injury to the non-breaching party for which money damages would not be a sufficient remedy and agrees that the other party shall be entitled to seek immediate injunctive or other equitable relief to remedy or forestall any such breach or threatened beach. Such remedy shall not be deemed to be the exclusive remedy for any breach of this Agreement, but shall be in addition to all other rights and remedies available at law or in equity.

9.   No Representations or Further Obligations. Neither this Agreement nor the disclosure or receipt of Information shall constitute or imply any promise or intention to make any purchase of products or services by either party or any commitment by either party with respect to the present or future marketing of any product or service. It is understood that this Agreement does not obligate either

— 3 —

party to enter into any further agreements or to proceed with any possible relationship or other transaction.

10.   Termination. Either party may terminate the exchange of Information under this Agreement at any time by written notice to the other specifically referencing this Agreement; however, the obligations of each party to maintain the confidentiality of the Information it has received under this Agreement shall continue for a period of one (1) year after such termination.

11.   No Waiver. No failure or delay by either party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

12.   Amendment. This Agreement may not be modified, supplemented or amended orally, but only by a writing signed by both parties hereto.

13.   Governing Law. This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Florida, without regard to its choice of law provisions.

14.   Attorneys' Fees. The prevailing party in any litigation or other proceeding brought to enforce or interpret the terms of this Agreement shall be entitled to its court costs and reasonable attorneys' and paralegal fees and expenses.

15.   Severability. If any one or more provisions of this Agreement are determined to be invalid, illegal or unenforceable in any respect, the remaining provisions of this Agreement shall remain in effect and shall not be affected by such invalidity, illegality or unenforceability.

— 4 —

16. <u>Miscellaneous.</u> This Agreement: (a) may not be amended or modified except by a writing signed by all parties; (b) inures to the benefit of and is binding upon each party and its successors and permitted assigns; (c) may not be assigned or the obligations of the parties delegated without the written consent of the other party; (d) constitutes the entire agreement of the parties with respect to its subject matter and supersedes any prior agreement or understanding; and (e) may be executed in counterparts.

EXECUTED the date set forth in the introductory paragraph of this Agreement.

A & A Cable Contractors Inc.

By: _____

Name: Andres Cruz.

Title: President

MASTEC NORTH AMERICA, INC.

By: _____

Name: Mark Frosaker

Title: Division Vice President

— 5 —

# MasTec

## SUB INFORMATION SHEET

**TYPE OF WORK:** _____ FTTP _____    **VENDOR #** _____

**COMPANY TYPE: (Indiv, Partner, Corp, LLC)** _Corporation_

**JOB #:** __061022__    **JOB LOCATION:** __Verizon NY-Syracuse__

**COMPANY NAME:** _____ A & A Cable Contractors Inc. _____

**CONTACT NAME:** _____ Andres Cruz _____

**ADDRESS:** _____ 12506 Ann Lane _____

_____ Houston, TX 77064 _____

**PHONE #:** _____ 281-469-2888 _____

**CELL #:** _____ 281-541-1439 _____

**FAX #:** _____ 281-469-2885 _____

**E-Mail Address:** _ aacable@sbcglobal.net_

**FEIN #:** ~~76-9687813~~ 76 0648286

**TERMS:** **Net 15-10% retainage withheld up to $10,000**

**HOW CHECK IS SENT:**

Jobsite: _____

Mail: _____

FedEx: ____✓____    **Acct #** _2551-1240-6_
                     **Address:** _12506 Ann Lane_
                     _Hou, TX 77064_
                     **Phone #:** _281-469-2888_
                     **Contact:** ~~Amy Soliz~~ _Andres Cruz_

**Dated:** _5-8-06_

MasTec North America, Inc.   P.O. Box 70, Hwy. 2 East, Shevlin, Minnesota 56676
Phone: 218-785-2171   Fax 218-785-2076   www.mastec.com

EXHIBIT "5"

# ⋅MasTec

Subcontractor Agreement No.:

## SCHEDULE 1

**Name of Contractor:**        MasTec North America, Inc. ("Contractor")

**Address of Contractor:**     152 Park Ave., PO Box 70,  Shevlin MN  56676

**With a copy to:**

      MasTec North America, Inc.
      3155 N.W. 77th Avenue
      Miami, FL 33122-1205
      Fax: 305.406.1907

**Telephone/Fax No.:**         (218) 785-2171 / (218) 785-2198

**Name of Subcontractor:**     A & A Cable Contractors Inc. ("Subcontractor")

**Address of Subcontractor:**  12506 Ann Lane

**Telephone/Fax No.:**         281-469-2888 / 281-469-2885

**Federal Employer Identification No.:**  76-0687813

**Primary Contract/Owner:**    Verizon

**Primary Contract Location:**  Syracuse, New York

**Effective Date:**            May 5, 2006

A — ᴅ⸴
SUBCONTRACTOR INITIALS

Page 11 of 11

## AFFIRMATION OF SERVICE

State Of New York )
                  )    s.s.:
County of New York )

I, the undersigned, an attorney duly admitted to practice in the State of New York, with offices of **GINARTE, O'DWYER GONZALEZ & WINOGRAD, LLP**, affirm as follows under penalties of perjury:

On August 28, 2008, I served the within:

### AFFIRMATION IN OPPOSITION TO DEFENDANT VERIZON'S MOTION FOR A MORE DEFINITE STATEMENT PURSUANT TO F.R.C.P. 12(e)

upon the following parties and/or attorneys for the parties shown below at the address shown below, being the address designated by said attorney for the purpose, by depositing a true copy of same enclosed in a postpaid, properly addressed wrapper in an official depository under the exclusive care and custody of the United States Post Office Department.

Addresses:

To:    Ledy-Gurren Bass & Siff
       Attorneys for Defendants - VERIZON
       475 Park Avenue South
       New York, New York 10016
       (212) 447-1146

       Jones Hirsch Connors & Bull P.C.
       Attorneys for Defendants - MASTEC
       1 Battery Park Plaza, 28th Floor
       New York, New York 10004

RICHARD M. WINOGRAD